Donald M. Maclean and Eleanor Y. Maclean v. Commissioner.
Maclean v. Commissioner
Docket No. 47267.
United States Tax Court
T.C. Memo 1955-34; 1955 Tax Ct. Memo LEXIS 305; 14 T.C.M. (CCH) 117; T.C.M. (RIA) 55034; February 9, 1955
*305 Held: The alleged dependent did not, during the years involved, receive over half of her support from petitioners, and petitioners are, therefore, not entitled to dependency credits for her in such years. Section 25(b)(3), Internal Revenue Code of 1939. Donald M. Maclean, 1160 Bay Street, Alameda, Calif., pro se. Wayne Prim, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax of petitioners for years and in amounts, as follows: 1948
$ 99.60
1949
99.60
1950
135.86
Findings of Fact The facts stipulated are so found and made a part hereof. The petitioners are Donald M. Maclean and Eleanor Y. Maclean, husband and wife, who, at all times pertinent, were resident in Alameda, California. They filed joint income tax returns for the years involved, prepared on a cash basis of accounting, with the collector of internal revenue for the first district of California. During 1948, 1949 and 1950, petitioner Donald M. Maclean (hereinafter referred to as Donald) was employed as a deputy collector of the Bureau of Internal Revenue, assigned to the Oakland office. Petitioner Eleanor Y. Maclean (hereinafter referred to as Eleanor) operated a pastry shop known as Eleanor's Cake Shop in the City of Alameda. In the latter part of 1945, petitioners purchased their present home at a cost of *307 $12,000. Such residence consists of five bedrooms, a living room, dining room, recreation room, sun porch and kitchen. Petitioners took possession thereof early in 1946. At that time the family group consisted of eight members: petitioners, a widowed daughter and her infant child, an unmarried daughter, two unmarried sons, the older of whom was in college and was home only during vacations or for occasional meals, and Eleanor's mother, Fanny E. Young (hereinafter referred to as Fanny). At first, Fanny shared one of the five bedrooms with the unmarried daughter. It was anticipated that the widowed daughter and her child would remain in the household and that the daughter would attend a college; but the daughter remarried in April of 1946, and, with her child, left petitioners' home. Thereafter, Fanny occupied a room to herself. During the years 1948 and 1949, petitioners, their younger son and daughter, and Fanny resided continuously in the home. The same persons occupied the residence in 1950, with the exception of the younger daughter who had married in November, 1949, and had left home. The older son, who graduated from college in June, 1950, also shared the home during the last *308 six months of 1950. Beginning in March, 1950, and continuing through December 1950, Fanny paid petitioners $20 each month, and during the last six months of 1950 the older son also paid petitioners $50 per month, such money to be used for household expenses. Upon reaching the age of 65 Fanny made application to the Department of Social Welfare, State of California, for old age security payments, and, in 1941, the application was granted. Such payments were received by her continuously from 1941 until her death on January 31, 1953. During the years in question, she received the maximum amounts authorized, which amounts were as follows: 1948 $735
1949
900
1950
900 Application for the old age security payments was renewed annually by Fanny. She always saved some money, and, at the time of her death, had managed to accumulate several hundred dollars, which amount she had concealed and which was used to defray her burial expenses. The exact amount of such savings is not shown. In satisfaction of one of the requirements for Fanny's obtaining the foregoing payments, Eleanor, with the assistance of Donald, prepared and signed under oath, documents entitled "Statement *309 of Responsible Relative of Applicant under OAS Law" for the years in question, which documents were filed with the Alameda County Welfare Commission. In the document signed and so filed on May 28, 1947, Eleanor stated that she was then making no contribution to Fanny, the applicant; that she was contributing free rent; that she was contributing no free board; and that there was no other contribution being made. She further stated that from May, 1947, she would contribute nothing, neither free rent nor free board, and that no other contributions would be made. In another statement signed and so filed on May 27, 1948, Eleanor stated that she was not then and would not thereafter make contributions in any form and that no other contributions were then being made or would thereafter be made to Fanny. Fanny expended in her own behalf the amounts of $29, $44, and $216.50 in 1948, 1949, and 1950, respectively, for doctor bills and drugs. For each of the years involved, petitioners filed an affidavit with respondent in each of which they stated living expenses so paid by Fanny, as follows: 1948
1949
1950
Clothes
$200 $200 $
Care of Hair
100
100
100
Miscellaneous
100
100
100
Doctor and Drugs
200
To Taxpayers
200
Total $400 $400 $600
Presents to Family not
considered living expenses
250
250
250
Total $650 $650 $850
Unaccounted for or unex-
pended $250 $250
$ 50
*310 Fanny was confined to her room throughout the year 1950. Petitioners spent $20.45 and $14 in 1948 and 1949, respectively, for presents given Fanny. In 1950, petitioners incurred expenses totaling $226.50 for nursing and rental of a hospital bed and equipment for Fanny's benefit. Throughout the years involved, petitioners spent approximately $80 every two weeks, or $2,080 per year, for household expenses, including food. In addition, they spent during the taxable years the following amounts: 1948
1949
1950
City and County
Taxes
$ 301.35
$ 360.00
$ 384.50
Payments on Prin-
cipal of Purchase
Money Loan
287.65
385.25
336.47
Interest on Pur-
chase Money
Loan
262.35
264.75
213.53
Fire Insurance
20.00
20.00
20.00
Utilities
284.64
323.53
348.79
Repairs
54.51
253.73
$1,559.29
$1,607.26
$1,303.29
On the basis of the foregoing and all other evidence of record, we find as an ultimate conclusion of fact that petitioners did not contribute over half of Fanny's support for the years 1948, 1949, and 1950. Opinion VAN FOSSAN, Judge: The sole issue is whether petitioners are entitled to a dependency credit for Fanny in each of the years *311 1948, 1949, and 1950. The applicable portion of the statute involved is section 25(b) of the Internal Revenue Code of 1939, the pertinent provisions of which are set out below. [1]
At the outset respondent admits that all statutory requirements are satisfied except that with respect *312 to the amount of support Fanny received from petitioners during the taxable years. The narrow question thus remaining to be resolved is whether petitioners' contribution to Fanny's support in such years amounted to over half thereof. The facts herein show that Fanny was the recipient of "Old Age Security" payments from the State of California in each of the years with which we are concerned. This being true, petitioners must establish by competent evidence the total cost of Fanny's support in each year and that they furnished more than was derived from the other source. Allan & Mary Cunningham, 22 T.C. 906. The term "support", as we are concerned with it, is generally considered as including board, lodging, clothing, medical and dental care, entertainment and recreation and other items which contribute to the happiness and well being of the dependent. See 5 Mertens, Law of Federal Income Taxation, Section 32.10, p. 597 fn. 35(a), citing memorandum opinion of this Court; see also Rev. Rul. 235, C.B. 1953-2, p. 23; cf. also Regs. 111, Section 29.12-5(d). Where, as here, the taxpayer owns the property in which lodging is furnished and there is no showing *313 as to the fair rental value thereof, see Lena Hahn, 22 T.C. 212; Richard P. Prickett, 18 T.C. 872, resort must be had to the actual expense of providing such lodging and the allocable portion thereof attributable to the dependent's support. To be taken into account in determining this expense are such items as property taxes, mortgage interest, property insurance, ordinary repairs, the cost of utilities, and other expenses of like nature. 5 Mertens, supra. See also Rev. Rul. 235, supra. Petitioners have prepared on brief a schedule purporting to be based upon the proof adduced herein and to set up the amounts contributed by them to Fanny's support and the amount thereof derived from the welfare payments reecived by her. Such schedule reflects petitioners' contention that to the items of support set out above should be added an allowance of depreciation of their dwelling house and its furnishings based upon a cost basis of $12,000 and $3,500, respectively, and, as figured by Donald, a useful life of 20 years and 10 years, respectively. We cannot agree. It does not follow from the fact that depreciation is allowed as a deduction in certain business *314 operations, that it is allowable as an element of support in the present case. Strictly speaking, depreciation is not an expense paid. It is allowed as a deduction, theoretically or actually, to build up a fund sufficient to replace property used in a trade or business or in an operation for profit at the end of the useful life of such property. The house in question was not used in a trade or business, or for profit. Petitioners cite no authority in support of their position, and we know of none. We entertain no doubt in holding that depreciation on petitioners' house and furnishings is not an element of support. Petitioners contend further that if they are to be allowed nothing for depreciation, they should be allowed to take into account the amount paid in each year on the principal of the mortgage loan. Again we disagree. Such payments did not constitute an actual "out-of-pocket" expense since they served to build up petitioners' equity in the dwelling and would redound to the benefit of them and their heirs. Moreover, the evidence is clear that petitioners would have acquired and maintained the dwelling in question irrespective of whether lodging was furnished Fanny. We do not *315 feel that any portion of the purchase payments in question may properly be allocated to the cost of Fanny's support. With respect to the portion of Fanny's support which was derived from the welfare payments received by her, we cannot refrain from commenting that there is an irreconcilable departure between the present testimony and the representations and sworn statements made by petitioners in connection with Fanny's application for old age assistance and to the Bureau of Internal Revenue representatives in support of the dependency claim. It is not easy to ascertain which version is the truth. The record shows such payments to have been the source of certain specific amounts expended by her in each year for doctor bills and medicines. The record also indicates the expenditure by her in each year of additional sums for her support, but fails to show with any degree of exactitude the amounts so expended. Petitioners' testimony with regard thereto is for the most part no more than vague generalizations and estimates based in many instances upon the unsupported opinion of the witness. Furthermore, such testimony is in direct contradiction of the above mentioned affidavits which in *316 themselves are self-serving general estimates. Moreover, the credibility and completeness of the testimony, as well as the affidavits, are placed in doubt by the sworn statements prepared by Donald and filed by Eleanor with the Alameda County Welfare Commission. The evidence regarding Fanny's purported expenditures for gifts to the family is equally inexact. For this reason, we are unable to determine what portion thereof, if any, is properly to be considered as an item of Fanny's support. Fanny apparently incurred some expenses for some gifts which she gave to various members of the family each year. Even if we were to determine the amounts so spent by application of the so-called Cohan rule, see Cohan v. Commissioner, 39 Fed. (2d) 540, we would still be left with substantial amounts of support payments received each year for which there is no accounting. Moreover, there is nothing on this record to show what portion of the amounts supposedly expended by Fanny for gifts constituted payments from current receipts as against what may have been saved and accumulated from such payments in prior years. Petitioners would have us believe that all funds for which they are unable *317 to account were saved by Fanny and constituted the "several hundred dollars" found following her demise. Here again, we have nothing definite as to the amount thereof or as to the period over which such funds may have been accumulated, although it would appear that any normal person in such a situation would have counted the money found and would have been able to give an exact answer. Thus, the state of the proof herein offers us no alternative to approving respondent's determination. Wherefore, we have found as a fact, and here hold, that petitioners did not furnish over half of Fanny's support for the years involved. Decision will be entered for the respondent. Footnotes
1. SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME. * * *
(b) Credits for Both Normal Tax and Surtax. - (1) Credits. - There shall be allowed for the purposes of both the normal tax and the surtax, the following credits against net income: * * *
(D) An exemption of $600 for each dependent whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $500, except that the exemption shall not be allowed in respect of a dependent who has made a joint return with his spouse under section 51 for the taxable year beginning in such calendar year. * * *
(3) Definition of Dependent. - As used in this chapter the term "dependent" means any of the following persons over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer: * * *
(D) * * * mother of the taxpayer, * * *↩